﻿Citation Nr: AXXXXXXXX
Decision Date: 12/31/19 Archive Date: 12/30/19

DOCKET NO. 190405-8064
DATE: December 31, 2019

ORDER

Entitlement to a rating in excess of 30 percent for specific phobia, situation type, is denied.

Entitlement to a rating in excess of 20 percent for right knee anterolateral meniscectomy and patellar chondromalacia is denied.

FINDINGS OF FACT

1. The Veteran’s service-connected psychiatric disability is manifested by occupational and social impairment with occasional decrease in work efficiency and intermittent periods of the inability to perform occupational tasks. 

2. The Veteran’s right knee disability does not exhibit ankylosis, instability, impairment of the tibia or fibula, or genu recurvatum. 

CONCLUSIONS OF LAW

1. The criteria for entitlement to a rating in excess of 30 percent for simple phobia, situational type, have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.7, 4.130, DC 9403 (2018). 

2. The criteria for entitlement to a rating in excess of 20 percent for right knee anterolateral meniscectomy and patellar chondromalacia have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5259-5262 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from March 1987 to July 2003. 

The Veteran elected the Direct Review lane. Accordingly, the Board will consider evidence of record as of the March 2019 rating decision. 

Direct review is the appeal option to the Board in which a Board decision is issued based on evidence of record at the time of the prior decision. The Veteran is not entitled to a hearing and the Board cannot accept into the record additional evidence in its direct review.

Increased Rating

The Veteran contends that his disabilities warrant increased ratings throughout the course of the appeal. 

A disability rating is determined by the application of VA’s Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. 

VA has a duty to acknowledge and consider all regulations that are potentially applicable through the assertions and issues raised in the record, and to explain the reasons and bases for its conclusions. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

The evaluation of the same disability under various diagnoses, known as pyramiding, is generally to be avoided. 38 C.F.R. § 4.14 (2018). The critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the disabilities is duplicative or overlapping with the symptomatology of the other disability. See Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994).

The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as “staged ratings.” Fenderson v. West, 12 Vet. App. 119, 126-27 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

In considering the evidence in any given appeal, it is the responsibility of the Board to weigh the evidence and decide where to give credit and where to withhold the same and, in so doing, accept certain medical opinions over others. Schoolman v. West, 12 Vet. App. 307, 310-11 (1999). In this regard, the Board has been charged with the duty to assess the credibility and weight given to evidence. Davidson v. Shinseki, 581 F. 3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F. 3d 1331 (Fed. Cir. 2006); Charles v. Principi, 16 Vet. App. 370 (2002); Klekar v. West, 12 Vet. App. 503, 507 (1999); Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). Indeed, the Court has declared that in adjudicating a claim, the Board has the responsibility to do so. Bryan v. West, 13 Vet. App. 482, 488-89 (2000); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992). In doing so, the Board is free to favor one medical opinion over another, provided it offers an adequate basis for doing so. Evans v. West, 12 Vet. App. 22, 30 (1998); Owens v. Brown, 7 Vet. App. 429, 433 (1995). 

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. When all of the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

1. Entitlement to a rating in excess of 30 percent for simple phobia, situational type

The Board notes that VA received the Veteran’s increased rating claim on February 5, 2019. 

The Veteran’s condition was awarded a 30 percent rating according to Diagnostic Code 9403. 

A 30 percent disability evaluation is assigned for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of the inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, or recent events). Id.

A 50 percent rating is assigned for occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short-and long-term memory; impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and the difficulty in establishing and maintaining effective work and social relationships. 

A 70 percent rating is assigned for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships.

A 100 percent rating is assigned for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 

The use of the term ‘such as’ in the general rating formula for mental disorders in 38 C.F.R. § 4.130 demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of symptoms, or their effects, that would justify a particular rating. See Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). It is not required to find the presence of all, most, or even some, of the enumerated symptoms recited for particular ratings. Id. The use of the phrase ‘such symptoms as,’ followed by a list of examples, provides guidance as to the severity of the symptoms contemplated for each rating, in addition to permitting consideration of other symptoms that are particular to each veteran and disorder, and the effect of those symptoms on his or her social and work situation. Id. 

In Vazquez-Claudio v. Shinseki, 713 F.3d 112 (Fed. Cir. 2013), the Federal Circuit stated that “a Veteran may only qualify for a given disability rating under § 4.130 by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration.” It was further noted that “§ 4.130 requires not only the presence of certain symptoms but also that those symptoms have caused occupational and social impairment in most of the referenced areas.”

When evaluating a mental disorder, the Board shall consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the veteran's capacity for adjustment during periods of remission. 38 C.F.R. § 4.126 (a). The rating agency shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. Id.

As to a current diagnosis, the record reflects that the Veteran’s condition has been diagnosed as specific phobia, situation type. 

Turning to the medical evidence at hand, the Board notes that the Veteran attended a VA examination for this issue in February 2019. At the examination, the Veteran stated that he felt that his symptoms were getting worse. The Veteran reported that he no longer can drive “on the left side of the road,” and he described having intimacy issues. The Veteran stated that he avoids taking elevators, crowded places, and driving under a bridge. The Veteran stated that he can’t scuba dive anymore, can't lay down on chairs when visiting the dentist, or wear the heavy protectors for x-rays. The Veteran reported that just the thought of being in a closed place gives him tremendous anxiety and he has a panic attack. The Veteran reported that he is currently employed. The Veteran stated that he obtained a bachelor’s degree in business, then an MBA, and is now working on electronic engineering degree. The Veteran stated that he has a good relationship with his friends and family. The Veteran stated that he has good relationships with his colleagues at work. The Veteran reported that he gets along with everyone and he has no family issues. Lastly, the Veteran reported that he is currently not seeking treatment for his phobia. Upon examination, the examiner indicated that the Veteran did not have suicidal ideations, homicidal ideations, or hallucinations. After the VA examination, the VA examiner opined that the Veteran had occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation. 

The Board has also reviewed the Veteran’s VA treatment records. The Veteran’s medical history does not show symptoms that his disability is worse than what was reported at his VA examination. 

In sum, the Board finds that the Veteran’s condition has remained consistent and that a rating increase is not warranted. After a review of the record, the Board finds that the evidence of record shows that the Veteran’s disability produces occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks. The Board acknowledges the Veteran’s reports concerning intimacy; however, the Board notes that the Veteran stated that he has no issues with his family. Thus, the Board finds that this symptom is currently contemplated in his 30 percent rating. The Board has also considered the Veteran’s contentions that his condition warrants a higher rating; however, the Veteran’s contentions are outweighed by the medical evidence of record and the opinion provided by February 2019 VA examiner. For the above stated reasons, the preponderance of the evidence is against the claim, the benefit of the doubt doctrine does not apply, and the claim for entitlement to a rating in excess of 30 percent for specific phobia, situation type, must be denied.

The Board has also considered a 50 percent rating; however, the evidence of record does not support a finding that the Veteran’s condition exhibited occupational and social impairment with reduced reliability and productivity. Specifically, the most competent evidence of record does not show that the Veteran exhibited flattened affect; circumstantial, circumlocutory, or stereotyped speech; difficulty in understanding complex commands; impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. The Board acknowledges that the Veteran stated that he experiences panic attacks that occur weekly or less often; however, the Board finds that this symptom alone does not warrant an increased rating. Lastly, the Board notes that no medical professionals who have evaluated the Veteran have found that his symptoms caused occupational and social impairment with reduced reliability and productivity. Thus, for the above stated reasons, the Board finds that a 50 percent rating is not warranted.

The Board has also considered a 70 percent rating; however, the evidence of record does not support a finding that the Veteran’s condition exhibited occupational and social impairment with deficiencies in most areas. Specifically, the Board notes that the most competent medical evidence of record does not show that the Veteran reported suicidal ideation or obsessional rituals which interfere with routine activities. In addition, medical treatment professionals have not reported that the Veteran exhibited illogical speech; spatial disorientation; or neglect of personal appearance and hygiene. The Board also notes that the medical professionals in this case have not reported that the Veteran experiences near continuous panic, or depression affecting the ability to function independently, appropriately and effectively. Lastly, the Board notes that no medical professionals who have evaluated the Veteran have found that his symptoms exhibited occupational and social impairment, with deficiencies in most areas. Thus, for the above stated reasons, the Board finds that a 70 percent rating is not warranted.

The Board has also considered a 100 percent rating; however, the evidence of record does not support a finding that the Veteran’s condition exhibited total occupational and social impairment. Specifically, the Board notes that the competent medical evidence of record does not show that the Veteran reported any type of hallucinations, delusions, homicidal ideations or suicidal ideations. In addition, the record does not reflect that the Veteran exhibited grossly inappropriate behavior. Moreover, the evidence does not show that the Veteran was unable to perform activities of daily living, was disoriented to time or place, or experienced memory loss. Lastly, the Board notes that no medical professional who has evaluated the Veteran has found that his symptoms were so severe as to constitute total occupational and social impairment. Thus, for the above stated reasons, the Board finds that a 100 percent rating is not warranted. 

2. Entitlement to a rating in excess of 20 percent for right knee anterolateral meniscectomy and patellar chondromalacia

The Board notes that the Veteran’s claim for an increased rating was received by VA on February 5, 2019. 

The Board notes that the Veteran’s condition has been awarded a 20 percent rating according to Diagnostic Code 5259-5262. 

Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the rating assigned. The additional code is shown after the hyphen. Unlisted disabilities requiring rating by analogy will be coded first with the numbers of the most closely related body part and 99. 38 C.F.R. § 4.27.

For purposes of this decision, the Board notes that the average normal range of motion of the knee is flexion from 0 to 140 degrees and extension from 140 to 0 degrees. 38 C.F.R. § 4.71.

The words “slight,” “moderate,” and “severe” as used in the various Diagnostic Codes are not defined in the VA Schedule for Rating Disabilities. Rather than applying a mechanical formula, the Board must evaluate all of the evidence for “equitable and just decisions.” 38 C.F.R. § 4.6.

Diagnostic Code 5010 provides that arthritis due to trauma that is substantiated by X-ray findings is to be rated as degenerative arthritis. Diagnostic Code 5003 provides that degenerative arthritis that is established by X-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. When there is some limitation of motion of the specific joint or joints involved that is noncompensable (0 percent) under the appropriate diagnostic codes, Diagnostic Code 5003 provides a rating of 10 percent for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under Diagnostic Code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion.

A knee disorder can receive separate ratings, based on symptoms related to arthritis, stability, flexion, and extension. Where a Veteran has degenerative joint disease which is evaluated under Diagnostic Code 5003, a separate, compensable evaluation may be assigned under Diagnostic Code 5257 or 5258 if there are concomitant symptoms, such as knee instability or subluxation. See VAOPGCPREC 23-97. When a Veteran has a knee disability evaluated under Diagnostic Code 5257, to warrant a separate rating for arthritis based on X-ray findings, the limitation of motion need not be compensable under Diagnostic Code 5260 or Diagnostic Code 5261; rather, such limited motion must at least meet the criteria for a zero-percent rating. See VAOPGCPREC 9-98.

Disabilities of the knee are rated under DC 5256 through DC 5263 of 38 C.F.R. § 4.71a (2018).

Diagnostic Code 5256 provides ratings for ankylosis of the knee. Favorable angle in full extension, or in slight flexion between 0 degrees and 10 degrees is rated 30 percent disabling; in flexion between 10 degrees and 20 degrees is rated 40 percent disabling; in flexion between 20 degrees and 45 degrees is rated 50 percent disabling; and extremely unfavorable, in flexion at an angle of 45 degrees or more is rated 60 percent disabling. 38 C.F.R. § 4.71a.

Diagnostic Code 5257 provides ratings for other impairment of the knee that includes recurrent subluxation or lateral instability. Slight recurrent subluxation or lateral instability of the knee is rated 10 percent disabling; moderate recurrent subluxation or lateral instability of the knee is rated 20 percent disabling; and severe recurrent subluxation or lateral instability of the knee is rated 30 percent disabling. 38 C.F.R. § 4.71a.

Diagnostic Code 5258 provides a 20 percent disability rating for cartilage, semilunar, dislocated, with frequent episodes of “locking,” pain, and effusion into the joint. 38 C.F.R. § 4.71a.

Diagnostic Code 5259 provides a 10 percent rating for symptomatic residuals of removal of a semilunar cartilage. Ratings under DC 5259 require consideration of 38 C.F.R. §§ 4.40 and 4.45 because removal of a semilunar cartilage may result in complications producing loss of motion. VAOGCPREC 9-98.

Diagnostic Code 5260 provides ratings based on limitation of flexion of the leg. Flexion of the leg limited to 60 degrees is rated at 0 percent disabling, flexion of the leg limited to 45 degrees is rated 10 percent disabling; flexion of the leg limited to 30 degrees is rated 20 percent disabling; and flexion of the leg limited to 15 degrees is rated 30 percent disabling. 38 C.F.R. § 4.71a. See VAOPGCPREC 09-04 (separate ratings may be granted based on limitation of flexion (Diagnostic Code 5260) and limitation of extension (Diagnostic Code 5261) of the same knee joint).

Diagnostic Code 5261 provides ratings based on limitation of extension of the leg. Extension of the leg limited to 5 degrees is rated 0 percent disabling, extension of the leg limited to 10 degrees is rated 10 percent disabling; extension of the leg limited to 15 degrees is rated 20 percent disabling; extension of the leg limited to 20 degrees is rated 30 percent disabling; extension of the leg limited to 30 degrees is rated 40 percent disabling; and extension of the leg limited to 45 degrees is rated 50 percent disabling. 38 C.F.R. § 4.71a.

Diagnostic Code 5262 provides ratings for impairment of the tibia and fibula. A 10 percent rating is warranted for malunion with slight knee or ankle disability. A 20 percent rating is warranted for malunion with moderate knee or ankle disability. A 30 percent rating is warranted for malunion with marked knee or ankle disability. A 40 percent rating is warranted for nonunion with loose motion and requiring a brace. 38 C.F.R. § 4.71a.

Diagnostic Code 5263 provides a 10 percent rating is assigned for genu recurvatum, acquired traumatic, with weakness and insecurity in weight-bearing objectively demonstrated. 38 C.F.R. § 4.71a. 

As to a current diagnosis, the Board notes that the Veteran’s condition has been diagnosed as right knee anterolateral meniscectomy and patellar chondromalacia. The Board further notes that the record reflects that the Veteran’s right knee exhibits degenerative arthritis. 

Turning to the medical evidence at hand, the Board notes that the Veteran attended a VA examination in February 2019. At the examination, the Veteran reported that he has increased pain in his knee. The Veteran stated that “he has not had any treatment or care for his right knee since his last C&P exam.” The Veteran stated that he takes over the counter pain medications as needed for knee pain. Upon examination, the examiner indicated that the Veteran had right knee flexion 0 to 130 degrees and extension 130 to 0 degrees. The examiner indicated that the Veteran had no pain on examination. The examiner indicated that the Veteran did not have any knee flareups. The examiner indicated that the Veteran did not have ankylosis, subluxation, or lateral instability. 

In sum, the Board finds that the Veteran’s condition has remained consistent and a rating increase or a separate compensable rating is not warranted. Specifically, the most probative evidence of record which is the Veteran’s VA examination does not show that the Veteran has lost range of motion that warrants an increased rating. In addition, the evidence of record does not show ankylosis, instability, impairment of the tibia or fibula, or genu recurvatum. Moreover, the Board notes that the Veteran’s cartilage condition exhibited pain, but it did not exhibit any signs of locking. The Board has considered the Veteran’s complaints, including pain. However, the record indicates that the Veteran’s claimed symptoms, to the extent that they limited his range of motion, were contemplated by the current evaluations for painful or limited motion and did not show that the Veteran’s right knee motion was otherwise limited to such an extent that a higher rating would be warranted. The Board further notes that functional loss on use is also fully contemplated by the current assigned rating based on the fact that current clinical findings do not demonstrate compensable limitation of motion and there is therefore no additional compensable limitation of motion that can provide a basis for a higher rating. For the above stated reasons, the preponderance of the evidence is against the claim, the benefit of the doubt doctrine does not apply, and the claim for entitlement to a rating in excess of 20 percent for a right knee disability, must be denied. 

 

 

Michael J. Skaltsounis

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board M. Rescan, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.